IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA BINGHAM, both individually and as the Administratrix of the ESTATE OF JUSTIN T. AICHHOLZ, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : : | DOCKET NO. 2:22-cv-02769 |
| LANCASTER COUNTY, SERGEANT PHILIP KLINGER, CORRECTIONAL OFFICER MARCUS JONES, CORRECTIONAL OFFICER RANDALL SNODDERLY, CORRECTIONAL OFFICER NICHOLAS CARPINELLI, CORRECTIONAL OFFICER JEFFREY CHRISTNER, CORRECTIONAL OFFICER JOHN/JANE DOES (1-10), PRIMECARE MEDICAL, INC., WILLIAM CATTELL, MD, JESSICA GRIMM, LSW, and CASSANDRA BIRRIEL, | : : : : : : : : : : : : : | |
| Defendants. | : : | |

**DEFENDANTS, LANCASTER COUNTY, SERGEANT PHILIP KLINGER, CORRECTIONAL OFFICER ("CO") MARCUS JONES, AND CO RANDALL SNODDERLY'S STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

Defendants, Lancaster County, Sergeant ("Sgt.") Philip Klinger, CO Marcus Jones, and CO Randall Snodderly (collectively "Lancaster Defendants") by and through their attorneys, MacMain Leinhauser PC, respectfully submit this statement of undisputed material facts in support of their Motion for Summary Judgement as to which Lancaster Defendants contend there are no genuine issues to be tried as follows:

---

[1] Plaintiffs have agreed to voluntarily dismiss Defendants, CO Jeffrey Christner and CO Nicholas Carpinelli. A Stipulation to Dismiss those Defendants will be filed when signed by all counsel.

1

***Admission and Mental Health Observations –***

1.  During his Commitment Initial Interview on July 11, 2020, Mr. Aichholz admitted "yes" to "considered or attempted to hurt yourself," but denied "thinking about hurting self or others;" he also answered "yes" that he "has attempted previous suicide attempt" by taking a bunch of Xanax pills. *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA000179 and 181.

2.  On July 11, 2020, Mr. Aichholz was placed on Level I Suicide Watch ("SSI") by Jennifer Bezts, MA of PrimeCare. *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA00074 and 179.

3.  Two (2) days later, on July 13, 2020, Mr. Aichholz met with Jessica Grimm, LSW, of PrimeCare for SSI follow-up and at that time, Mr. Aichholz denied any "SI" or suicide ideation and any mental health concerns/complaints; stated that he lied about a recent suicide attempt to lessen charges, and as a result, his SSI status was discontinued and Level II Suicide Watch ("SSII") was initiated. *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA00074 and JA000160-161.

4.  The next day, on July 14, 2020, Cassandra Birriel, LPC, of PrimeCare, met with Justin Aichholz to review SSII and at that time he stated that he was not suicidal and that he never tried to kill himself, rather, he lied in the hope that he would be taken to a hospital, not the prison, before they found drugs in his pants; however, SSII status was maintained. *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA000160.

5.  On July 15 and 16, 2020, Mr. Aichholz was seen again by LPC Birriel, of PrimeCare, and she determined that he presented a low risk of harm to self and others, but SSII

was maintained.  *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA000158-160.

***Aichholz Removed From Suicide Status -***

6.      On July 17, 2020, Mr. Aichholz was seen by LSW Grimm of PrimeCare at 12:03 p.m. and at that time he denied any mental health concerns/complaints, rated himself as a six (6) or seven (7) out of ten (10); LSW Grimm determined that Mr. Aichholz was a low risk of harm to himself and others, his condition was good and he significantly improved since her last meeting with him.  Mr. Aichholz was then put on Level III "Pysch Obs" ("POIII" or "PO3") status with thirty (30) minute detox watch.  *See* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA000074 and 158.

7.      Psychological Observation III is not a suicide level and the PrimeCare medical officials did not deem Mr. Aichholz to be a suicide risk.  *See* Exhibit "R" containing the deposition transcript of Thomas J. Weber of PrimeCare at JA002486, 256:13-23; *see also* Exhibit "D" containing excerpt of Plaintiff's PrimeCare medical records at JA000074 and 158.

8.      According to LSW Grimm, when someone is on Psych Obs or PO3, they are observed at thirty (30) minute intervals. *See* Exhibit "K" containing deposition transcript of LSW Grimm at JA000985-96, 260:21 - 261:4.

9.      According to LSW Grimm, between the time she saw Justin Aichholz on July 13, 2023 and again on July 17, 202, none of the LCP correctional staff interfered or prohibited LSW Grimm from seeing, treating or providing mental health care to Justin Aichholz.  *See* Exhibit "K" containing deposition transcript of LSW Grimm at JA001157-58, 260:21 - 261:4.

10.     At any time when LPC Birriel saw Mr. Aichholz from July 14-16, 2020 and during his incarceration between July 11-17, 2020, the Lancaster County Prison correctional staff

did not interfere with her ability to meet with Mr. Aichholz. *See* Exhibit "I" containing the deposition transcript of Cassandra Birriel, LPC, at JA000779, 275:3-20.

***Block Checks –***

11. The Lancaster County Prison Incident/Investigation Report of Charles Stevens demonstrates that on July 17, 2020, block checks were performed by COs Carpinelli, Snodderly and Jones at intervals of thirty (30) minutes between 4:34 p.m. and 8:06 p.m. *See* Exhibit "C" containing Lancaster County Prison Incident/Investigation Report of Charles Stevens at JA000046-47, Lancaster 00122-123.

12. The LCP overhead surveillance video confirms that COs Carpinelli, Snodderly, and Jones were performed at intervals of thirty (30) minutes between 4:34 p.m. and 8:06 p.m.; the video also shows Mr. Aichholz moving around his cell and the general cell block. *See* Exhibit "A" containing LCP Surveillance Video from July 17, 2020 at JA000001.

***Block Checks by COs Carpinelli and Snodderly –***

13. CO Carpinelli, who performed a block check at 4:34 p.m., and walked past Mr. Aichholz's cell at 5:09 p.m., recalled Justin Aichholz being happy when he was moved off of suicide status, as most inmates are, because they get their belongings back. *See* Exhibit "N" containing the deposition transcript of CO Carpinelli at JA001792-93, 65:19-66:2. *See* Exhibit "C" containing Lancaster County Prison Incident/Investigation Report of Charles Stevens at JA000046-47, Lancaster 00122-123.

14. CO Snodderly performed block checks at 5:01 p.m., 5:30 p.m., 6:06 p.m., 6:32 p.m., 7:05 p.m., and 7:32 p.m., and does not remember anything unusual about Justin Aichholz during any of the block checks he performed on July 17, 2020. *See* Exhibit "Q" containing the deposition transcript of CO Snodderly at JA002338-40, 77:20-79:1; *See* Exhibit "C" containing

Lancaster County Prison Incident/Investigation Report of Charles Stevens at JA000046-47, Lancaster 00122-123.

15. At the time Mr. Aichholz was discovered at 8:16p.m., COs Snodderly and Carpinelli were off the block and on break. *See* Exhibit "B" containing the LCP Incident Report Packet at JA000014-15, Lancaster 00087-88.

***Block Check by CO Jones –***

16. During his check at 8:06 p.m., CO Jones, who was covering the while COs Snodderly and Carpinelli were on break, observed Mr. Aichholz sitting on his bed. *See* Exhibit "C" containing Lancaster County Prison Incident/Investigation Report of Charles Stevens at JA000046-47, Lancaster 00122-123; *see also* Exhibit "O" containing the deposition transcript of CO Jones at JA001965-1970, 111:3-115:5.

17. CO Jones looked into Justin Aichholz's cell long enough to ensure that he was not in distress. Exhibit "O" containing the deposition transcript of CO Jones at JA001945, 90:7-10.

18. According to CO Jones, when an inmate is on PO3, an inmate requires thirty (30) minute checks to see that an inmate is okay by looking into the cell. *See* Exhibit "O" containing the deposition transcript of CO Jones at JA001880 and JA001881-82, 25:16-24 and 26:24-27:18.

19. According to his LCP Incident Report, CO Jones was giving COs Carpinelli and Snodderly their breaks; he was sitting at the Officer's desk on LCP Block G-1 when CO Christner called the Code Blue for Justin Aichholz. *See* Exhibit "B" containing the LCP Incident Report Packet at JA000008, Lancaster 00081.

***Sgt. Klinger – Shift Supervisor -***

20. On the night of the incident in this case, Sgt. Klinger was the acting shift commander during the 4:00 p.m. to 12:00 a.m. shift and responded to the Code Blue. *See* Exhibit

"P" containing the deposition transcript of Sgt. Klinger at JA002165-2166, 61:4-62:6; *see also* the *See* Exhibit "B" containing the LCP Incident Report Packet at JA000004-5 and Lancaster 00077-78.

21.  Sgt. Klinger states that he believes that based on the footage of CO Jones that he looked inside cell 2090 at 8:06p.m. long enough to make a judgment of the situation and ensure signs of life. Sgt. Klinger feels confident that if there was something wrong, CO Jones would have stopped. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002187-88, 83:6-84:4.

22.  Upon reviewing the video of the block check performed by CO Jones around 8:07 p.m. on the day of the incident, Sgt. Klinger states that he did not see anything that would cause him to believe CO Jones violated policy. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002175-76, 71:13-72:24.

23.  According to Sgt. Klinger, there is no specific requirement as far as timing goes or long a block check should take, it is based upon the officer's judgment. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002142, 38:3-22.

24.  According to Sgt. Klinger, if an inmate was downgraded from a Suicide 1 or 2 status to PO3 status, the check would not be different than an inmate that was on a block for several weeks—they would trust the medical department in making those decisions to change an inmate's status. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002147-48, 43:9-44:5.

***CO Christner Discovers Plaintiff at 8:16p.m. -***

25.  Justin Aichholz was discovered to be hanging in his cell by CO Christner at 8:16 p.m. on July 17, 2020 during a routine medical round in which prescriptions were delivered to

the inmate's cell;, and a Code Blue was called. *See* Exhibit "C" containing Lancaster County Prison Incident/Investigation Report of Charles Stevens at JA000046-47, Lancaster 00122-123; *see also* Exhibit "A" containing the LCP Surveillance Video from July 17, 2020 at JA000001, and Exhibit "B" containing the LCP Incident Report Packet at JA000006-7.

26. According to his LCP Incident Report, CO Christner was helping with breaks on LCP Block G-1, and while assisting in the distribution of medication with LPN Julissa [Otero] he saw Justin Aichholz hanging when he walked passed cell 2090. *See* Exhibit "B" containing the LCP Incident Report Packet at JA000006-7, 000021 and Lancaster 00079-80, 0094.

27. Upon seeing Justin Aichholz hanging, CO Christner called a Code Blue and cell 2090 to be opened, and once opened, CO Christner entered the cell and grabbed Justin Aichholz's legs to take the pressure off his neck; and at that time, CO Jones and Sgt. Klinger entered the cell and assisted in cutting Justin Aichholz down so CPR could be performed by LPN Otero. *See* Exhibit "B" containing the LCP Incident Report Packet at JA000006-7 and JA000021 and LCP 00079-80 and 94.

***LCP Policies/ Training on Suicide Prevention -***

28. Lancaster Defendants had a policy in place that addressed an inmate's suicide status and block checks thereof. *See* Exhibit P containing the deposition transcript of Sgt. Klinger at JA002124-002125, 20:11-21:23; Exhibit M containing the deposition transcript of CO Christner at JA0014411442 , 63:17-64:21; *See* Exhibit N containing the deposition transcript of CO Carpinelli at JA00758-759, 31:23-32:1; *See* Exhibit O containing the deposition transcript of CO Jones at JA001911-1914, 56:21-59:6; *See* Exhibit Q containing the deposition transcript of CO Snodderly at JA002309-2313, 48:19-52:1.3

7

29. Sgt. Klinger has read the LCP suicide prevention policy and is familiar with it. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002124, 20:11-18.

30. Sgt. Philip Klinger received training on suicide prevention during basic training as well as during annual refresher training that also included training on block checks; he is aware of warning signs of suicidal behavior. *See* Exhibit "P" containing the deposition transcript of Sgt. Klinger at JA002119, 15:1-20:3.

31. CO Marcus Jones received training on suicide prevention to become a Correctional Officer and had annual training on suicide prevention that included verbal and behavioral clues. *See* Exhibit "O" containing the deposition transcript of CO Jones at JA001877-78 and JA001913-1914 and 22:22-23:6 and 58:14-59:17.

32. CO Snodderly recalled receiving training on what they are supposed to do for suicide watches, he is also sure he received annual training to recognize verbal and behavioral clues that indicate potential suicide and how to respond appropriately. *See* Exhibit "Q" containing the deposition transcript of CO Snodderly at JA002280 and JA002310, 19:4-7; 49:10-24.

33. CO Carpinelli recalled one (1) to two (2) days of training dedicated to the concern of suicide and suicide completions [sic] and what to do if you were concerned about any of it; also received training on behavioral questions. *See* Exhibit "N" containing deposition transcript of CO Carpinelli at JA001752-54, 25:21-27:1.

***LCP Was In Full Compliance With All State Correctional Standards[2] -***

34. In 2018 and 2021, Lancaster County Prison was inspected by the Pennsylvania Department of Corrections in 2018 and 2021 as part of a biannual audit process and was found

---

[2] PA DOC inspections were not performed statewide in 2020 due to the Covid-19 pandemic.

by the DOC to be in full compliance during the inspection period with all portions of the State Department of Corrections standards, namely, Title 37, Chapter 95 Count Correctional Institutions, Administrative Standards, Regulations and Facilities. *See* Exhibit "E" containing Pennsylvania Department of Corrections letters of January 20, 2019 and February 10, 2022 at JA000187-188, Lancaster 000404-05.

*LCP Is In Full Compliance With The National Commission on Correctional Health -*

35. In 2019, the National Commission on Correctional Health Care (NCCHC) determined it will continue to accredit Lancaster County Prison for its full compliance with NCCHC's Standards for Health Services in Jails. *See* Exhibit "F" containing NCCHC letter of August 26, 2019 at JA000190, Lancaster 003754.

*Suicide By Hanging Occurs Rapidly -*

36. According to Andrew Baker, M.D., a medical examiner and forensic pathologist, death from hanging occurs very rapidly with loss of consciousness at 10 seconds, loss of muscle tone at approximately one (1) minute, loss of all movement by approximately four (4) minutes, with brain cells starting to die at five (5) minutes and brain death at ten (10) minutes. *See* Exhibit "S" containing the report of Dr Baker at JA002541-002547.

*Aichholz's Family, Girlfriend and Fellow Inmate Did Not Detect That Aichholz was Suicidal -*

37. During the time at LCP and prior to his suicide, Aichholz made a total of six (6) phone calls his family (mother and father), his girlfriend and an unidentified friend. *See* Exhibit "C" at JA000048.

38. On none of the calls does Aichholz threaten suicide. *Id.*

39.  None of Aichholz's family members (mother and father), his girlfriend or unidentified friend contacted LCP to indicate any concern that Aichholz was suicidal or a self-harm risk. *See* Exhibit "C" at JA000298.

40.  These personal phone calls were not monitored or listened to by any LCP personnel. *See* Exhibit "U" Deposition Transcript of Warden Steberger at JA002649-002650.

41.  Fellow inmate, Jason Roy Velaquez was interviewed after Aichholz's death and reported that Aichholz, who he knew from their time at LCP, never talked about hurting himself. "No. Not even a little… he seemed happy." *See* Exhibit "C" at JA000048, *see also* Exhibit "T" Interview with Jason Velaquez at JA002551.

42.  Velaquez further stated that "I was in shock about it [the suicide]. He gave no visible signs to me that he would hurt himself." *Id.*

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **MacMain Leinhauser PC** |
| Date: October 17, 2023       By: | */s/ David J. MacMain*<br>David J. MacMain<br>PA Attorney I.D. No. 59320<br>Matthew S. Polaha<br>PA Attorney I.D. No. 320674<br>433 W. Market Street, Suite 200<br>West Chester, PA 19382<br>*Attorney for Defendants, Lancaster County, Sergeant Philip Klinger, Officer Marcus Jones, Officer Jeffrey Christner, Correctional Officer Randall Snodderly, and Correctional Officer Nicholas Carpinelli* |

**CERTIFICATE OF SERVICE**

I, David J. MacMain, Esq., hereby certify that on this 17th day of October 2023, a copy of the foregoing *Defendants, Lancaster County, Sergeant Philip Klinger, CO Marcus Jones, CO Jeffrey Christner, CO Randall Snodderly, and CO Nicholas Carpinelli's Statement Of Undisputed Material Facts* was served upon all counsel of record via ECF:

Nancy J. Winkler, Esquire
Todd Schoenhaus, Esquire
Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
*Attorney for Plaintiffs*

John R. Ninosky, Esquire
Marshall Dennehey Warner Coleman & Goggin
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
*Attorney for PrimeCare Defendants*


Respectfully submitted,

**MacMain Leinhauser PC**


By:     /s/ David J. MacMain
        David J. MacMain
        PA Attorney I.D. No. 59320
        Matthew S. Polaha
        PA Attorney I.D. No. 320674
        433 W. Market Street, Suite 200
        West Chester, PA 19382
        *Attorney for Defendants, Lancaster County, Sergeant Philip Klinger, Officer Marcus Jones, Officer Jeffrey Christner, Correctional Officer Randall Snodderly, and Correctional Officer Nicholas Carpinelli*